Per Curiam:
This case was referred pursuant to Rule 57 (a) to Trial Commissioner Franklin M. Stone with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on September 20, 1965. Plaintiff has filed no notice of intention to except to the opinion and report of the commissioner and the time for so doing pursuant to the Buies of the court has éxpired. On November 17, 1965, defendant filed a motion to dismiss for default pursuant to Buie 63 requesting that the court adopt the commissioner’s report and findings and dismiss plaintiff’s petition.' . Since the court agrees with the commissioner’s findings, his opinion and his recommendation for conclusions of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case and defendant’s motion is granted. Plaintiff is, therefore, not entitled to recover and his petition is dismissed.
'Opinion oe Commissioner
Plaintiff, a former Army enlisted man now in the Army Eeserve, seeks in this action to recover disability retirement pay from the time he was removed from the Temporary Disability Eetired List (TDEL) as being deemed physically fit for the performance of active military duty. The applicable and controlling statutes involved are Section 402 of the Career Compensation Act of 1949, 63 Stat. 802, as amended, 10 U.S.C., Sec. 1201, el seq. (1958), and the Act of 1946, 60 Stat. 812, 837, as amended, 10 U.S.C. Sec. 1552 (1958), relating to correction of military records. The questions to be resolved are whether the ultimate determination of the Secretary of the Army that plaintiff was fit for active *684 military duty, and the action of the Army Board for Correction of Military Records in refusing to correct plaintiff’s military records to show he was unfit for military service by reason of physical disability at the time of his removal from the TDRL, were arbitrary, capricious, unsupported by substantial evidence, or otherwise contrary to law.
On January 14, 1957, plaintiff was injured in line of duty as a result of being crushed between two trucks at Fort Benning, Georgia, sustaining multiple fractures of the pelvis and injury to the sciatic nerve on the left side. Plaintiff was confined for treatment in the Army Hospital at Fort Benning from the date of the accident until early in June 1957, when he was transferred to the Brooke Army Hospital, Fort Sam Houston, Texas, where he remained until August 19,1957.
Pursuant to a recommendation made by a Medical Board at the Brooke Army Hospital in a report dated July 22, 1957 (see finding 4 (a) and (b)), a Physical Evaluation Board (PEB) held proceedings on July 22, 1957, and confirmed the findings of the Medical Board, ibid., by entering diagnoses summarized as follows: Paralysis, on the left side, of (1) the sciatic nerve, with the degree of severity shown as “incomplete, moderate” — VA Diag. Code No. 8520; (2) the obturator nerve, “severe” — YA No. 8578; and (3) the femoral nerve, “incomplete, mild” — VA. No. 8526.
The PEB found that plaintiff’s disabilities might be permanent, evaluated his disabilities at 20 percent under Diagnosis 1, 10 percent under Diagnosis 2, and 10 percent under Diagnosis 3, for a combined disability rating of 40 percent, and recommended that he be placed on the temporary disability retired list, as being physically unfit to perform military duty, and re-evaluated in twelve months.
Plaintiff was transferred to the TDRL, effective August 19, 1957, and commenced receiving disability retirement pay in September 1957. He was retained on the TDRL as a result of periodic physical examinations given to him in each of the years 1958 (see finding 7), 1959, 1960 and 1961.
On March 5, 1962, plaintiff was given a final periodic physical examination by the Board of Medical Examiners at the U.S. Naval Hospital, St. Albans, New York. Under *685 date of April 23,1962, the Board submitted a report in which it expressed the opinion that plaintiff was unfit for duty, that his condition was stable, and that he should be referred to a Physical Evaluation Board for re-evaluation and final disposition. The Board did not evaluate the percentage of plaintiff’s disability. (See finding 8.)
On June 6,1962, plaintiff, represented by military counsel, personally appeared and testified before a Physical Evaluation Board convened at Governors Island, New York. After a full hearing, and review of plaintiff’s military service and medical records, the Board submitted a report dated June 6, 1962,[1] in which it entered the following diagnoses :

The Board evaluated plaintiff’s disabilities at 10 percent under Diagnosis 1,10 percent under Diagnosis 2, and zero percent under Diagnosis 3, for a combined disability rating of 20 percent. The Board found that all of plaintiff’s disabilities were permanent and that he was “physically unfit to perform the duties of his office, rank, or grade by reason of physical disability”, and recommended that he be separated from the service. (See finding 9(a), (b), and (c).)
The Army Review Council in Washington, D.C., reviewed the proceedings of the Physical Evaluation Board and under date of June 25, 1962, submitted to the Adjutant General a recommendation that the June 6,1962 report of the Board be modified by deleting all entries relating to the diagnoses made by the Board, the percentage of disability allowed plaintiff for the condition shown in each diagnosis and the combined disability rating given to him, the permanency of his disabilities, the physical unfitness of plaintiff to perform military duty, and the recommendation that he be separated from the service. The Council further recommended that the *686 Board’s report be checked to show plaintiff as being “Physically fit”, and made the following pertinent “Remarks”:
The member is deemed physically fit for the performance of active military duty commensurate with his age and grade. This finding is in accord with current Army medical standards of fitness for retention on active duty. (AR 40-501, paragraph 3-31a).
Member is qualified for retention on duty because the mild degree of severity of leg weakness described in the records will not prevent ordinary military service, with appropriate use of the physical profile serial system.

MEMO TO PEB:

The Physical Evaluation Board’s investigation of member’s present status and work history was fine. Member has been fully employed. He can serve, with an appropriate profile.
•By letter dated June 27, 1962, the Adjutant General advised plaintiff of the proposed modified findings recommended by the Physical Review Council and further advised him that such findings, if approved by the Secretary of the Army, would result in his being “removed from the Temporary Disability Retired List as physically fit with the opportunity to re-enlist in the Army Reserve the day following in lieu of being removed from the list and separated with severance pay.” Plaintiff was further advised that prior to final action being taken in his case, he might submit a written statement in rebuttal, and that thereafter, if he should elect to submit a rebuttal, the Army Physical Disability Appeal Board, would consider the same along with the recommended findings of the Physical Evaluation Board and the Physical Review Council, and finally adjudicate the matter in the name of the Secretary of the Army.
• On August 31, 1962, by direction of the Secretary of the Army who approved the recommended findings of the Physical Review Council, plaintiff was ordered removed from the TDRL. However, on September 5, 1962, said orders were revoked and plaintiff’s case reopened, on the basis of additional evidence submitted by his attorney.
On September 17, 1962, plaintiff appealed to the Physical Disability Appeal Board. In rebuttal to the proposed modified findings recommended by the Physical Review Council, *687 plaintiff submitted a statement in which he incorporated a medical report dated September 7,1962, and signed by a Dr. Alexander L. Bassin, covering a physical examination he had made of plaintiff on that date. Dr. Bassin’s report contains a detailed description of the examination he made of plaintiff and findings based thereon. Dr. Bassin concluded his report by stating, in pertinent part, “The disability which is based on the objective clinical signs is estimated at about thirty-five to forty-five percent, and will probably be permanent.” (See finding 13.)
On September 25, 1962, the Physical Disability Appeal Board, after considering all pertinent evidence of record, findings and recommendations of the Medical Board, the.. Physical Evaluation Board, the Physical Review Council, and plaintiff’s rebuttal, found that the findings and recommendations of the Physical Evaluation Board, as modified by the Physical Review Council, “are supported by the evidence of record, are correct in fact, and are in accordance with Department of the Army policies pertaining to physical fitness and/or physical disability separation or retirement”, and recommended that the Adjutant General take appropriate action consistent with the foregoing findings.
The findings and recommendations of the Physical Disability Appeal Board were subsequently approved, and, thereafter, by direction of the Secretary of the Army, plaintiff was ordered removed from the temporary disability retired list and transferred to the Army Reserve, effective October 22,1962.
On-October 24,1962, plaintiff filed a claim with the Veterans Administration for service connected disability benefits. On January 23,1963, after one or more physical examinations, the Veterans Administration gave plaintiff a disability rating of 10 percent for “Residuals of sciatic popliteal obturator and femoral partial paralysis”, and zero percent for “Residual fracture left pubic ramus”, resulting in a combined dis-abilhy rating of 10 percent from October 24,1962.
In February 1963, plaintiff filed an application with the Army Board for Correction of Military Records, requesting that his records be changed in such a manner as to show him *688 physically unfit for military duty and entitled to disability retirement pay effective August 18, 1962. On March 20, 1963, after receiving an opinion from the Office of the Surgeon General to the effect that at the time of plaintiff’s removal from the temporary disability retired list and separation from active service, he was not then suffering from any physical impairment of such a degree or nature that would warrant his retirement for disability, the Correction Board denied plaintiff’s application. By letter dated April 9, 1963, plaintiff was advised of the Board’s decision.
On June 18, 1963, plaintiff filed his petition herein, alleging arbitrary, capricious, and unlawful action on the part of the Secretary of the Army in determining him physically fit for active military duty, effective August 18, 1962, and claiming entitlement to disability retirement pay from that date, less any appropriate set-offs.
It is not questioned that plaintiff was suffering from some physical disability at the time he was found fit for active military duty. But, as this court said in Wales v. United States, 132 Ct. Cl. 765, 130 F. Supp. 900 (1955) :
* * * Not all ailments or disabilities are incapacitating to the extent of requiring retirement.
Even if the court should be inclined to the belief that reasonable minds might differ from the determination made by the Secretary of the Army that plaintiff was fit for military duty, it is not justified in substituting its own judgment for the one made by the Secretary, and this court has no jurisdiction in the matter unless the Secretary’s action was arbitrary, capricious, unlawful, or not supported by substantial evidence. Nichols v. United States, 158 Ct. Cl. 412 (1962). On many occasions this court has expressed its concurrence with the long standing view held by the courts, generally, that the judiciary should not interfere with the Army’s determination of who is able, or unable, to perform active duty, in the absence of a clear showing that the Army acted arbitrarily or capriciously, or contrary to applicable statutes and regulations.
In Hoen v. United States, 157 Ct. Cl. 235, 240 (1962), this court said:
*689 This court has repeatedly made it clear that it will not review the decision of an authorized board of the Armed Services in a disability retirement case to determine when or whether a service man is fit or unfit for military service. The burden of proof is on plaintiff in all such cases to establish that the denial of retirement rights was arbitrary, capricious, or contrary to law. * * *
See, e.g., O'Brien v. United States, 124 Ct. Cl. 655 (1953); Holliday v. United States, 128 Ct. Cl. 647 (1954); Beamish v. United States, 130 Ct. Cl. 767, 128 F. Supp. 158 (1955); Wales v. United States, supra; Prichard v. United States, 133 Ct. Cl. 212, 135 F. Supp. 420 (1955); Towell v. United States, 150 Ct. Cl. 422 (1960); Furlong v. United States, 153 Ct. Cl. 557 (1961); Thompson v. United States, 156 Ct. Cl. 158 (1962); and Johnston v. United States, 157 Ct. Cl. 474 (1962).
It is clear from the case law cited hereinbefore and the applicable statutes involved that plaintiff has several hurdles to clear in his quest for disability retirement pay. In order for plaintiff to establish entitlement to disability retirement benefits under the Career Compensation Act of 1949, supra, he must prove (1) that the action of the Army in determining that he was “physically fit for the performance of active military duty”, or, in the words of said statute, that he was not “unfit to perform the duties of his office, grade, rank or rating”, and removing him from the temporary disability retired list, was arbitrary, capricious, unsupported by substantial evidence, or otherwise contrary to law, (2) that at the time he was removed from the temporary disability retired list, he was unfit for the performance of military duty and suffering from a permanent physical disability rateable at least 30 percent under the standard schedules of rating disabilities then in use by the Veterans Administration, and (3) that the action of the Army Board for Correction of Military Records in denying plaintiff’s application, requesting that his records be changed to show a reversal of the findings of the Physical Evaluation Board, as modified by the Physical Review Council, affirmed by the Physical Disability Appeal Board, and ultimately approved by the Secretary of *690 the Army, was arbitrary, capricious, unsupported by substantial evidence, or otherwise contrary to law.
Plaintiff first contends that there is a glaring inconsistency between the findings made by the Naval Board of Medical Examiners on April 23,1962, and the June 6, 1962 findings and recommendations of the Physical Evaluation Board. This argument is without merit. Both the Medical Board and the Physical Evaluation Boai’d were of the opinion that plaintiff was unfit for military duty; but it is important to note that the Medical Board did not evaluate and rate plaintiff’s disability. It. appears, that plaintiff’s real quarrel with the Physical Evaluation Board is that it gave him a combined disability rating of only 20 percent. Plaintiff contends that the Board was reluctant to recognize his severe impairment of physical activity, and demonstrated bias, prejudice and unfairness, by prefacing a question asked of him with an allegedly untrue statement to the effect that the record indicated there had been an improvement in his condition. Plaintiff’s charges are unsupported by the record, and a review of the reports of the Medical Board and Physical Evaluation Board at Brooke Army Hospital, dated July 22,1957, the Board of Medical Examiners at the Naval Hospital on April 23, 1962, and the June 6, 1962 Physical Evaluation Board, together with the transcript of the proceedings of that Board, clearly discloses that plaintiff’s condition improved over the course of time between 1957 and 1962.
Plaintiff directs a more serious complaint to the action of the Physical Review Council in recommending the adoption of proposed modified findings and recommendations which, in effect, reversed those made by the June 6, 1962, Physical Evaluation Board. Plaintiff argues that the evidence upon which the Council based its findings and recommendations, and the Secretary of the Army ultimately determined plaintiff to be fit for active military duty, does not support conclusions different from those reached by the Board on June 6, 1962. By this argument, plaintiff infers that the Council was required to rubberstamp the findings and recommendations of the Board, and did not have the expertise, or the discretionary authority and responsibility, to evaluate the evidence dif *691 ferently than the Board. It cannot be seriously questioned that the findings and recommendations of the Board were properly subject to review by the Council and that it was not required to concur in the conclusions of the Board. Assuming, arguendo, that plaintiff’s contention is valid, he has painted himself into a corner because the Board rated plaintiff’s disability at 20 percent or 10 percent short of the minimum required rating of 30 percent.
Undoubtedly, plaintiff was suffering from- some physical discomfort and disability at the time the determination was made that he was fit for duty; however, the record shows that the fracture sustained by plaintiff had completely healed; that there was no demonstrable atrophy; that no particular impairment in' his walking was noted upon personal observation ; that he has been continuously engaged in gainful, full time employment since a short time after his release from active duty in August 1957; and that he has participated, to some extent, in recreational activities such as bowling, swimming, and takes long walks.
The foregoing facts and the evidence of record support the modified findings and recommendations proposed by the Physical Review Council. ' It also is important to note that the Council recommended plaintiff for retention in the service and that he was eventually transferred to the Army Reserve Corps. It does not seem reasonable to believe that the Council would have recommended plaintiff for retention, if it did not believe plaintiff was physically fit for military duty.
Plaintiff argues unpersuasively that both the decisions of the Physical Disability Appeal Board and the Secretary of the Army, affirming the findings and recommendations of the Physical Evaluation Board, as modified by the Physical Review Council, constituted abuse of discretion and that such determinations were arbitrary, capricious and unsupported by substantial evidence. After the actions of the Physical Evaluation Board and the Physical Review Council, plaintiff was given an opportunity' to file a rebuttal and he did so. The rebuttal consisted of a very detailed report submitted by Dr. Bassin setting forth his findings based upon a comprehensive physical examination he made of plaintiff and a thorough analysis of his condition. While Dr. Bassin esti *692 mated plaintiff’s disability at from 35 to 45 percent, the Army was not obligated to accept the findings of plaintiff’s personal physican or agree with his said estimate. Dr. Bassin did not personally testify on plaintiff’s behalf and there is no way of knowing what standards he used in arriving at his estimate of the percentage of plaintiff’s disability. Simply because Dr. Bassin’s estimate was contrary to the Army’s evaluation of plaintiff’s condition does not mean that Dr. Bassin was right and that the Army was wrong. Dr. Bassin’s report was before the Appeal Board, and it undoubtedly considered and evaluated the report, along with plaintiff’s other medical records and the reports of the PEB and Council proceedings, before taking final action. Plaintiff was given a full and fair hearing before the Appeal Board and plaintiff has not shown any arbitrary or capricious action on the part of the Board, or on the part of the Secretary of the Army in approving the Board’s decision.
We turn now to plaintiff’s final contention that the decision of the Army Board for Correction of Military Records, denying his application requesting reversal of the Secretary of the Army’s determination that he was fit for active military duty, was arbitrary, capricious, unsupported by substantial evidence, and contrary to law. It should be kept in mind that subsequent to the decision of the Physical Disability Appeal Board, and the action of the Secretary in determining plaintiff fit for military service and causing him to be removed from the temporary disability retired list, the Veterans Administration examined plaintiff on one or more occasions and gave him a disability rating of only 10 percent.
It may be reasonably assumed that the Correction' Board carefully considered plaintiff’s military service and medical records, the records of the Veterans Administration, the report and transcript of the June 6,1962 Physical Evaluation Board proceedings, the findings of the Physical Review Council, the decision of the Physical Disability Appeal Board and all of the evidence submitted by plaintiff. No doubt the Correction Board gave considerable weight to the rating action of the Veterans Administration and the opinion expressed by the Surgeon General, mentioned hereinbefore, *693 in arriving at its decision to deny plaintiff’s application. While the Board was not obligated to defer to the action of the Veterans Administration and the opinion of the Surgeon General, neither was it required to accept Dr. Bassin’s evaluation of plaintiff’s condition as conclusive. Certainly the Board had the duty to weigh all of the evidence before it and the right to reject Dr. Bassin’s opinion as not being supported by the record.
In Furlong v. United States, supra, at p. 563, this court stated:
* * * There is, of course, a strong presumption that the Ketiring Board and the Secretary faithfully discharged the duties imposed upon them by law. Only . clearly convincing proof can induce us to hold that a retiring board or the Secretary had arbitrarily or capriciously denied an officer retired pay to which he was entitled. .
# * * * *
It is only where the decision of the board is clearly unsupported by substantial evidence or when there was a noncompliance with applicable laws and regulations that this court may interfere with the findings of the board. * * *
In Thompson v. United States, supra, at p. 162, the court stated:
* * * Only when it appears that the Secretary’s determinations are arbitrary, capricious, unsupported by the evidence, or contrary to the laws and regulations relating to disability retirement will this court exercise its authority to redress the effects of such arbitrary government action by the award of a money judgment. * * *
In Johnston v. United States, supra, at p. 478, this court stated:
* * * The issue before us is whether the Secretary’s decision that plaintiff was physically fit to perform duties commensurate with his rank and office at the time of his release from service was so arbitrary and capricious as to constitute a violation of his legislative mandate. In order to establish that the Secretary’s action was so arbitrary and capricious, plaintiff must discharge a very substantial burden of proof. * * *
*694 As the court said in Towell v. United States, supra, at p. 433:
* * * It is only when the decision of the Correction Board is clearly unsupported by evidence or when there was noncompliance with effective and applicable laws . and regulations that the court will interfere with the Correction Board’s determination. * * *
Plaintiff has not sustained his burden of showing by clearly convincing evidence that the decision of the Correction Board, denying plaintiff’s application, was arbitrary, capricious, or not supported by substantial evidence.
In summary, upon consideration of the entire record, it is concluded that neither the determination of the Secretary of the Army that plaintiff was physically fit for the performance of active military duty or his action in removing plaintiff from the temporary disability retired list, nor the decision of the Army Board for Correction of Military Records, denying plaintiff’s application for a change in his military records, was arbitrary, capricious, or unsupported by substantial evidence.
FINDINGS of Fact
1. Plaintiff is a citizen of the United States, a resident of Shelton, Connecticut, and his military service number is US 51384311.
2. Plaintiff was inducted into the United States Army on November 28, 1956, and served on active duty as a private, E2, until August 19,1957.
3. Plaintiff was found to be normal and in sound physical condition at the time of his induction on November 28,1956. On January 14, 1957, while undergoing basic training as a private, plaintiff was crushed between two trucks in the battalion motor pool at Fort Benning, Georgia, and sustained multiple fractures of the pelvis and injury to the sciatic nerve on the left side. As a result, plantiff was confined in Army hospitals at Fort Benning, and Fort Sam Houston, Texas, from January 14, 1957 to the date of his transfer to the Temporary Disability Retired List (TDRL) on August 19,1957.
4. (a) On June 9, 1957, plaintiff was admitted to the Brooke Army Hospital, Fort Sam Houston, Texas, for ex- *695 animation and treatment. A Medical Board convened on July 22, 1957, and a report of the Board’s proceedings bearing the same date discloses that after considering plaintiff’s clinical records, laboratory findings, and a physical examination report dated June 17, 1957, the Board entered a diagnosis which reads in relevant part as follows:
Neuropathy, n.e.c., lumbosacral plexus, secondary to fracture, simple, n.e.c., inferior and superior rami of left pubis without artery involvement, * * *. Unchanged. Not stabilized. Incapacitating. * * * VA Code: 8520 Sciatic nerve, paralysis of, incomplete, moderate
8528 Obturator nerve, paralysis of, severe 8526 Femoral nerve, paralysis of, incomplete, mild.
(b) The Board recommended that plaintiff be referred to a Physical Evaluation Board (PEB.).
5. (a) A report of proceedings held by the PEB at the Brooke Army Hospital on July 22, 1957, discloses that on said date the Board entered the following disabling diagnoses:

(b) The Board found that plaintiff’s disabilities shown by the three above-listed diagnoses might be permanent; evaluated his disability shown under Diagnosis 1 at 20 percent, under Diagnosis 2 at 10 percent, and under Diagnosis 8 at 10 percent, for a combined disability rating of 40 percent; and recommended that plaintiff be placed on the TDRL and re-evaluated in twelve months.
6. Plaintiff was placed on the TDRL, effective August 19, 1957, as being unfit for active military service by reason of physical disability. Thereafter, commencing September 1957, he received temporary disability retirement pay in the amount of $48.21 per month based on the combined disability rating of 40 percent awarded him as a result of the PEB action and report of July 22,1957.
*696 7. On August 20,1958, plaintiff reported to the U.S. Naval Hospital at Chelsea, Massachusetts, for a periodic physical examination. A report submitted by the Board of Medical Examiners at that medical facility under date of August 25, 1958, reads in pertinent part:
3. Since being placed on the Temporary Disability Retired List the patient states that his symptoms have remained much the same. He is single at the present time and works as a mechanic. However, he states, that he is not able to work as well as he would like to. His left leg and hip have continued to tire and ache. This becomes prominent when he sits, stands or lies too long in one position. His most comfortable position, however, is lying. If patient stands too long he has a rather severe cramp in the thigh and calf and has to either sit or lie down. He also has a pain in the small of his back when he sits too long. Patient has had a tingling sensation on the lateral surface of the left foot'since the injury. Patient has not noted any recent muscle atrophy. The patient, otherwise, has been feeling relatively well. He has no other complaints and is planning on getting married soon.
4. General physical examination revealed a well developed, nourished male in no distress. * * * Neurological examination was normal except for a slight atrophy of the left calf and thigh. There was slight pain on extension and location of the left leg. However, there was not a definite straight-leg raising or Patrick’s sign. Motor power was good except that there seemed to be some weakness of the left hamstrings and abductors of the thigh. However, patient complained of pain during the movement and thus it was difficult to be sure which was true weakness and what was faulty movement as result of pain. Examination of the back was normal. Deep tendon reflexes were decreased in the left patella and ankle. There was slight decrease in pin-prick over the lateral aspect of left foot. Patient had a slight limp of the left leg while walking. * * *
5. At present the patient shows minimal residual of a lumbosacral plexus neuropathy of the left. The main problem seems to be one of pain and discomfort and it is difficult to say how much of this is definitely organic. However, there is a definite residual now but would feel that it has improved since his last examination about a year ago. * * * It is the feeling of the Board that the patient still suffers from the above illness. It is the *697 recommendation of the Board that this patient be maintained on the Temporary Disability Retired List. He may appear before the Physical Evaluation Board in person and information pertaining to his condition may be disclosed. * * *
8. Plaintiff was given periodic physical examinations and his condition re-evaluated in each of the years 1959, 1960, and 1961, as a result of which he was retained on the TDItL. On March 5, 1962, plaintiff was given a final periodic physical examination by the Board of Medical Examiners at the U.S. Naval Hospital,- St. Albans, New York. A report submitted by the Board of Medical Examiners at that facility under date of April 23,1962, reads in pertinent part:
$ ‡ ‡ ‡
The evaluee and his medical records were examined in detail by the members of the Board. This man’s original injury occurred on 14 January 1957 when he was crushed between two trucks, sustaining fractures of the pelvis and injury to the sciatic nerve on the left. Since his last examination he has continued to work as a spare-parts man. He is unable to work at his trade as a mechanic. He is unable to maintain the necessary postures and the necessary changes in position that are required in full mechanical activity. He continues to complain of pain in the back and left lower extremity. He continues to have severe leg cramps at night and during the day if he is forced to maintain a continuing posture for a matter of only a few moments. All back motions are restricted. He has continuing discomfort in the back and the leg with any back motions. Straight leg raising is to 90 degrees on the right. Straight leg raising is to 60 degrees on the left with the production of a radiating sciatic pain. The left knee jerk and the left ankle jerk are absent. He has no demonstrable atrophy. Sensation is intact. Heel to toe walking is not well done. * * * X-ray examination of the pelvis and both hips reveals a well healed fracture in the left side of the pelvis which apparently involved the pubic ramus and the junction of the pubis and ischium just below the iliac spine. There may also have been a fracture in the area of the ischial tuberosity. Positions all appear good and the hips appear normal. This is the Final Periodic Physical Examination and it is the Board’s opinion that this man is unfit for duty and that his disability is stable and that he should be *698 referred to a Physical Evaluation. Board for final disposition.
RECOMMENDATION: Reevaluation by Physical Evaluation Board.
9. (a) On June 6,1962, a Physical Evaluation Board convened and held a hearing at Governors Island, New York. Plaintiff personally appeared before the Board and he was represented by military counsel provided for him. A report dated June 6, 1962, covering the proceedings, discloses that the Board found plaintiff physically unfit to perform military duties by reason of physical disabilities shown by diagnoses entered as follow:

(b) The Board found plaintiff’s above-stated disabilities to be permanent with a rating of 10 percent under Diagnosis 1,10 percent under Diagnosis 2 and zero percent under Diagnosis 3, for a combined disability rating of 20 percent, and it recommended that plaintiff be separated from the service.
■ (c) A complete transcript of the Board proceedings, attached to the Board’s report of June 6,1962, shows that plaintiff testified on direct and cross-examination, in summary, that three or four months after he was placed on the TDRL in August 1967, he resumed his normal occupation as an automobile mechanic, but gave it up after a month or two because the work was “too heavy” and he “couldn’t take it”; that since then he has been employed as a full time “parts man” in an automobile dealer’s garage and that his duties include delivering parts and working behind the parts counter; that he has constant, severe cramps in his left leg, thigh and back, particularly after sitting or lying too long in one position; that he suffers both “shooting pains” and “dull aches” in his back and left side, thigh, leg and foot, after standing any length of time, and when he stoops, squats or bends; that once in a while he walks from his home to the center of town, a distance of about a mile; that he *699 participates in leisure activities to the extent of bowling and swimming on an irregular and limited basis; and that his condition is about the same as it was at the time he was released from active military service.
The transcript of the hearing also shows that at the request of a medical member of the Board, plaintiff walked to the door of the hearing room and returned to his chair, after which it was noted on the record that he (plaintiff) “walks with a steady gait, a normal gait.”
10. The record of the proceedings of the Physical Evaluation Board convened June 6, 1962, was referred to the U.S. Army Physical Review Council. After a, review of that record, the Council submitted to the Adjutant General a recommendation, dated June 25,1962, that the findings of the Physical Evaluation Board be modified to show plaintiff as being “Physically fit”, and that the entries in the Board’s report of June 6, 1962, relating to the diagnoses made, the permanency of plaintff’s disabilities, the disability rating-percentages under each diagnosis and the combined disability rating, and the recommendation that plaintiff be separated from the service, be deleted. The Council’s recommendation contained “Remarks” which read as follows:
The member is deemed physically fit for the performance of active military duty commensurate with his age and grade. This finding is in accord with current Army medical standards of fitness for retention on active duty. (AR 40-501, paragraph 3-31a).
Member is qualified for retention on duty because the mild degree of severity of leg weakness described in the records will not prevent ordinary military service, with appropriate use of the physical profile serial system. MEMO TO PEB:
The Physical Evaluation Board’s investigation of member’s present status and work history was fine. Member has been fully employed. He can serve, with an appropriate profile.
11. By letter dated June 27, 1962, the Adjutant General advised plaintiff of the recommendation made by the Physical Review Council and that the proposed modified findings, if approved by the Secretary of the Army, would result in his “being removed from the Temporary Disability Retired List *700 as physically fit with the opportunity to re-enlist in the Army Reserve the day following in lieu of being removed from the list and separated with severance pay.”
Plaintiff was further advised that prior to final action being taken in his case he might submit a written statement in rebuttal of the recommended modified findings of the Council; that if he elected to take such action, it would have to be done within seven days; and that, thereafter, the entire matter would be considered by the U.S. Army Physical Disability Appeal Board-, which would finally adjudicate the matter in the name of the Secretary of the Army.
12. The Secretary of the Army approved the findings proposed and recommended by the Physical Review Council. On direction of the Secretary, plaintiff having been, determined physically fit for-military service, orders were issued on August 31,1962, removing him from the TDRL, effective September 20,1962. However, said orders were subsequently revoked on September 5, 1962, because plaintiff’s case was reopened on the basis of additional evidence submitted by his attorney.
13. On September 17,1962, plaintiff appealed to the Physical Disability Appeal Board from the determination that he was physically fit for military duty and the action taken in removing him from the TDRL. In rebuttal to the recommended modified findings of the Physical Review Council, plaintiff submitted a statement contending that the conclusion of the Physical Evaluation Board, as modified by the Physical Review Council, was inconsistent with the Board’s findings. In support of his statement, plaintiff incorporated therein, a two page medical report, dated September 7,1962, and signed by Dr. Alexander L. Bassin, an orthopedic physician. Dr. Bassin’s report, after setting out plaintiff’s complaints and a summary of his medical case history, reads as follows:
*, * % * %
On examination standing the patient shows that the crests of the right ilium is slightly higher than the left. There is a flattening of the lumbar lordotic curbe, there is spasm of the musculature, somewhat more on the left than on the right, which is increased with forward bending of the trunk beyond sixty degrees. There is *701 no acute pain with forward bending of the trunk. Backward bending of the trunk is free and without pain. Tilt of the trunk to the right and .left causes no pain.
With the patient supine, the leg lengths from the anterior superior spine to the medial malleolus was taken at thirty-seven and three-quarter inches on the right, and thirty-seven and one-half inches on the left. The patient shows also, on straight leg raising on the right, which could be performed to about seventy degrees without pain, and flexion of his right knee and thigh on the abdomen caused no pain. Rotation of the right hip was free and without pain. On the left a slight restriction of full abduction of the left thigh, there is a restriction of straight leg raising on the left beyond fifty degrees, and pain in an effort to raise the limb beyond this point passively. There is some slight restriction of full flexion of the left thigh on the abdomen. Rotation of the left hip is however within normal limits and without pain. This was performed with the left knee flexed. Abduction of the thigh against resistance and adduction of the thighs against resistance can be performed without acute pain, although some soreness is present in the left groin and posterior thigh. The knee kicks are equal but sluggish. There is no marked atrophy of the left calf or thigh. The circumference of the right thigh is made at nineteen and one-half inches, that of the left thigh at nineteen inches. With the patient prone, hyper-extension of the right thigh can be performed against resistance without pain. Hyperextension of the left thigh causes pain in the posterior thigh when the right leg is flexed at the knee against resistance, there are no symptoms, but with the left leg flexed at the knee against resistance there is a cramping in the left thigh which can be reduced by massage. The ankle jerk on the right is normal,-there is an absent ankle jerk on the left, there is a definite paraesthesia of the left foot, calf and thigh. Percussion over the cervical dorsal lumbar spine and sacrum, reveals no local areas of sensitiveness. The patient probably has a firm stable union of the pelvis, but there is obvious irritation of the sciatic nerve on the left which has produced these current symptoms. It may be necessary to explore the nerve at the site of the original injury to relieve this pressure if these symptoms persist.
In the meantime the patient has been very faithful with exercises in an attempt to restore more of the function of the left lower extremity. The disability which is based on the objective clinical signs is estimated at *702 about thirty-five to forty-five percent,'and will probably be permanent.
14. The Physical Disability Appeal Board met on September 25, 1962 and, after considering all pertinent evidence of record, findings and recommendations of the Medical Board, the Physical Evaluation Boaz’dj the Army Physical Review Council, and plaintiff’s rebuttal, made the following findings and recommendation:
The findings and recommendations of the Physical Evaluation Board as modified by the Army Physical Review Council are supported by the evidence of record, are correct in fact, and are- in accordance with Department of the Army policies pertaining to physical fitness and/or physical disability separation or retirement.
Recommendation: In view of the above findings, the board recommends that The Adjutant General take appropriate administrative action consistent therewith.
15. By direction of the Secretary of the Army, orders were issued on October 2,1962, removing plaintiff from the TDRL, effective October 22, 1962, and his disability pay was terminated as of that date.
16. On January 7, 1968, special orders were issued by the Army transferring plaintiff to the Army Reserve, effective October 22,1962.
17. (a) On October 24,1962, plaintiff filed a claim with the Veterans Administration for service connected disability benefits for “residuals of pelvic injury with nerve involvement”. The narrative portion of a Rating Decision, issued under date of January 23,1963, reads in pertinent part:[1]
F. Veteran was discharged from the temporary disability retirement list on 10-22-62. He had been evaluated at 40% combination for the residuals of his injuries.
Service records show the veteran suffered a crushing injury on 1-14-57 fracturing the left pubis ramus with involvement of the sciatic obturator and femoral nerves. Veteran had complete, healing of the fractures but continued to have lumbosacral plexus involvement. However at the time of hospital dis *703 charge he only complained of inability to walk long distances or stand for long periods of time without pain along the lateral aspect of the left lower leg. Current examination shows veteran’s knee jerks are dull but equal on both sides. There was absence of left ankle jerk and absence of Babinski, Chaddock and clonus. There was also mild weakness of the left leg and extension and possibly internal rotation. The left thigh at the lower third is % inch less than on the right. The orthopedic exam showed a % inch atrophy of the left lower leg. The muscle involvement in both legs and feet were found equal. There was a mild degree of reduction of perception with respect to pain on the sole of the foot, left.
Veteran was unable to resume his prior occupation as an automobile mechanic. His complaint was the feeling of slight weakness of the left leg. The examiner stated that on the above neurological findings there was a very minimal degree of disability. at the the present time.' The orthopedic examination showed normal motion without any tenderness. The Veteran could forward flex to touch the floor with his fingers. The X-ray showed well-healed fracture of the pubic ramus.
(b) The Veterans Administration rated plaintiff 10 percent disabled under VA Diagnostic Code No. 8520 for “ (8524, 8528, 8526) Residuals of sciatic popliteal obturator and femoral partial paralysis”, and zero percent disabled for “Residual fracture left pubic ramus”, the combined disability rating being 10 percent from October 24, 1962.
18. (a) Sometime in February 1963, plaintiff filed an application with the Army Board for Correction of Military Records in which he requested that his records be changed to show a reversal of the findings and recommendations of the Physical Evaluation Board which, as modified by the Physical Review Council, were finally approved by the Physical Disability Appeal Board in the name of the Secretary of the Army, and an increase in percentage of disability to 45 percent.[2]
(b) The Correction Board referred plaintiff’s application for correction of military records, together with Ms military *704 service, medical, and Veterans Administration records, to the Surgeon General’s office for review and an opinion regarding the medical issues raised by plaintiff and any other comment as might be helpful to the Board in adjudicating plaintiff’s case. Under date of March 15,1963, the Physical Standards Division, for the Surgeon General, advised the Board as follows:
1. Becords in the case of the above-named individual have been carefully reviewed in this office and in the offices of the appropriate consultants to The Surgeon General.
2. A review of the record shows that this applicant incurred a fracture of the left inferior and superior rami of the pelvis which resulted in his placement on TDBL. Periodic examinations revealed mild residuals in the form of slight weakness of the left leg, slight paresthesias and some cramps. As described, these were not of such severity as to preclude performance of military duty with an appropriate profile limitation, or to warrant a finding of unfitness. This is confirmed by both the VA rating and examination subsequent to his removal from TDBL.
3. The opinion is expressed that the applicant’s claim of error or injustice in the medical aspects of his removal from TDBL is not substantiated by the evidence of the medical record and he had no physical or mental impairment of such a nature or degree of severity which would •warrant his retirement for disability under the rules, regulations, policies, and laws in effect at that time.
(c) The Correction Board- denied plaintiff’s application on March 23,1963, and plaintiff was advised to that effect by The Adjutant General in a letter dated April 9, 1963.
19. Plaintiff filed his petition herein on June 18, 1963, claiming entitlement to disability retirement pay, computed at the rate of 40 percent of his basic pay as a private E-2 from August 18, 1962, and alleging that the action of the Secretary of the Army in determining him fit for active duty, effective on that date, was arbitrary, capricious, contrary to the evidence and unlawful.
Ultimate FINDINGS
20. Upon consideration of all of the evidence of record, it is concluded and found that neither (1) the action of the *705 Army Physical Disability Appeal Board in affirming the findings and recommendations of the Physical Evaluation Board, as modified by the Physical Review Council, with the result that plaintiff was deemed physically fit for military duty, nor (2) the action taken on direction of the Secretary of the Army removing plaintiff from the temporary disability retired list and terminating his 40 percent disability retirement pay, nor (3) the action of the Army Board for Correction of Military Records in denying plaintiff’s application for a change in his military records, was arbitrary, capricious, unsupported by substantial evidence, or otherwise contrary to law.
Conclusion of Law
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and his petition is therefore dismissed.

 A copy of this report is in evidence as Joint Exhibit 1, pp. 25-27, and a copy of the transcript of the Board proceedings is included in the same exhibit, pp. 29-38.

 No medical reports covering physical examinations ■which the Rating Decision indicates were made of plaintiff by the Veterans Administration were introduced in evidence in the instant case.

 Plaintiff’s application was not introduced in evidence and the exact date thereof is not disclosed by the record.