James M. CALLAN

v.

The UNITED STATES.

No. 189–68.

United States Court of Claims.

Nov. 12, 1971.

---

Paul R. Harmel, Washington, D. C., attorney of record, for plaintiff.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

### PER CURIAM:

This case was referred to Chief Trial Commissioner Marion T. Bennett with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on December 16, 1970. Plaintiff filed exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law and the case has been submitted to the court on the briefs of the parties and oral argument of counsel.

Since the court agrees with the commissioner's opinion, findings of fact and recommended conclusion of law, as hereinafter set forth,[1] it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover and the petition is dismissed.

### OPINION OF COMMISSIONER

BENNETT, Chief Commissioner:

Faced with the possibility of mandatory retirement because he had been passed over for promotion, plaintiff, upon his own application, was retired from active duty for length of service, as a Chief Warrant Officer in the Regular Air Force on July 1, 1962, under 10 U.S.C. § 1293. He now claims that he should have been retired at that time for disability under 10 U.S.C. § 1201 in his permanent rank of Major, Air Force Reserve. He applied to the Air Force Board for the Correction of Military Records for relief, which was denied. His allegation here is that the Board decision was unlawful and must be set aside because it was arbitrary, unsupported by substantial evidence, contrary to the evidence, and in violation of Air Force regulations governing disability retirement, including AFM 35–4, February 1, 1960, and AFM 160–1, April 30, 1953.

Plaintiff's claim for disability alleges four conditions: partial bilateral deafness, chondromalacia (a disease of the cartilage of the knee joints), skin cancer, and a psychiatric condition arising from the other conditions. Defendant concedes service connection for all but the psychiatric condition which it denies. Defendant, denies that any of the conditions were disabling at the time of plaintiff's retirement, within the meaning of applicable laws and regulations. Defendant insists that the action of the Correction Board was reasonable and fully supported by the evidence.

Plaintiff is a career military man with long and honorable service from 1941 until his retirement in 1962. His duties in the Air Force were administrative as opposed to combat. He did not have an aeronautical rating. Among other things he was a training instructor, project officer, writer, information officer, supply officer, photographer, and had a demonstrated aptitude for marksmanship. He trained men in gunfire and coached teams for participation in shooting matches and was himself a member of such teams which achieved championship caliber. He was personally the winner of many individual trophies and medals. In this work he was exposed to the noise of intensive gunfire. Cotton was available to put in his ears but he did not always use it. More effective devices were not made available to him nor was he advised of the danger to one's hearing from prolonged exposure to such noise. His wife first noticed a diminished hearing capacity in plaintiff in 1951–52. He also began to notice a ringing and humming in his ears, on occasion, and difficulty in hearing when background noises were present. He claims that as his condition progressed he suffered a total loss of hearing for short periods on several oc-

1. [Omitted from published decision.]

casions. This is not corroborated. He alleges also that this condition impeded his social and business contacts but apparently he neither sought nor received medical treatment for the condition and attendant headaches.

Plaintiff did receive examinations in which an audiometer verified a loss of some hearing, which under the provisions of AFM 160–1 would have caused his rejection had he been seeking an initial commission or entry on active duty or flying status. Indeed, his condition was such that under AFR 160–3, October 29, 1956, as amended, he should not have been assigned to any further duty involving hazardous noise exposure and should have been referred immediately to a diagnostic hearing center. Plaintiff's effectiveness reports, however, made no mention at all of his hearing loss or of any of the other conditions alleged and rated him highly upon the performance of his responsibilities. The Air Force physical examinations of plaintiff on January 11 and June 4, 1962, noted specifically that decreased hearing acuity caused plaintiff no difficulty in performance of his assigned duties.

The Veterans Administration examination on November 8, 1962, confirmed permanent partial, bilateral, perceptive-type deafness but it was not deemed sufficient for compensable rating. Plaintiff had been preparing for a teaching career at the high school or college level, and after he left the service it came as something of a shock to him, in August 1962, to fail the hearing examination for teacher certification by the Los Angeles public schools. He later got a school teaching position at Lompoc, California, where a physical examination is not required.

Plaintiff also began to experience difficulty with his knees in the early 1950's. They had a tendency to "pop out" of joint and to buckle, according to his testimony. The positions required for shooting produced stiffness and pain in his knees and made it difficult for him either to stand or to walk. He claims he sometimes fell. Some of his sports activities were curtailed and he sought and received medical treatment. The medical diagnosis of plaintiff's knee condition on June 4, 1962, before his retirement, was chondromalacia, defined above. The right knee was worse than the left. Yet, he was found physically qualified for retirement. On November 8, 1962, over 4 months after plaintiff had been retired, the Veterans Administration gave him a 10-percent, service-connected disability rating for the condition of the right knee. At the trial he disclaimed any trouble with his knees so far as current activities were concerned.

While the hearing and knee conditions were identified by plaintiff and defendant before his retirement, and were not claimed by plaintiff then nor found by defendant to be disabling or to interfere with performance of his assigned duties, plaintiff also had another emerging condition—skin cancer. He experienced small wart or scablike growths about his ears, nose, hands, eyelids and forearms. He did not point them out to defendant's doctors who did not see or make reference to them in the 1962 examinations. It was not until 1964, after plaintiff had left the military service, that he learned that they were malignant and underwent radiation and chemical treatments and surgery. This condition is said to be continuing. It would not be apparent to the casual observer and does not prevent plaintiff from working now nor has it been shown to have interfered with plaintiff's military duties. The condition could become terminal if neglected. The inference is that, possibly, plaintiff's exposure to the weather while in the service may have caused the condition. He is a man of fair complexion such as said to be susceptible to skin cancer from overexposure to the sun and wind. Plaintiff has received treatment of this condition by the Veterans Administration which has given a zero disability rating to it.

Plaintiff claims that while in the Air Force he suffered from nervous tremors and a personality change now claimed to

be a psychiatric condition of a disabling character. It is described as arising from his other physical disabilities and as interfering with his work and social contacts. He relies on tranquilizers for relief and testified to taking them since 1956 or 1957. During his military career plaintiff never claimed this as a disability, and there is no persuasive evidence that it interfered with his military duties. The Veterans Administration did have a neuropsychiatrist examine plaintiff but his findings were all within normal limits. Plaintiff was given a zero-percent rating for the alleged condition. The claim for service connection for this condition, if it exists, is not supported by the evidence.

When plaintiff's request, after retirement, for a physical evaluation board appearance was denied, he sought relief in January 1963 from the Air Force Board for the Correction of Military Records. The Surgeon General confirmed the mild hearing loss and chondromalacia of the knees but stated that the conditions were not severe enough to merit disability retirement. The Board then denied plaintiff's application without a hearing on the grounds that he had not submitted sufficient evidence to establish the required showing of probable error or injustice in his case. In 1968, with the assistance of counsel, plaintiff sought reconsideration of this ruling by the Board. The results were the same. Plaintiff's counsel then challenged the Surgeon General's advice to the Board in detail, but to no avail. All of the arguments and authorities there presented are now before the court and have been carefully considered.

The Act of August 10, 1956, 70A Stat. 91, as amended, 72 Stat. 1451, 10 U.S.C. § 1201, provides, in pertinent part:

> Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay, * * * is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary

may retire the member, with retired pay * * * if the Secretary also determines that—

> (1) based upon accepted medical principles, the disability is of a permanent nature;
>
> (2) * * *; and
>
> (3) either—
>
>> (A) the member has at least 20 years of service computed under section 1208 of this title; or
>>
>> (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans' Administration at the time of the determination; * * *

10 U.S.C. § 1216 provides in pertinent part:

> (a) The Secretary concerned shall prescribe regulations to carry out this chapter within his department.
>
> (b) The Secretary concerned has all powers, functions, and duties incident to the determination under this chapter of—
>
>> (1) the fitness for active duty of any member of an armed force under his jurisdiction;
>>
>> (2) the percentage of disability of any such member at the time of his separation from active duty; * * *.

Since it is clear from the applicable statute that plaintiff can get disability retirement pay only after a finding by the Secretary that he is permanently disabled to such an extent that he could not perform his duties, which the Secretary has not found, and since plaintiff, despite a recognized hearing loss, trouble with his knees and skin cancer, has never been found unfit for duty and never claimed that he was prior to his retirement, but on the contrary his military physical examinations found him qualified and his effectiveness reports reflect an above-average performance of assigned duties, *the decision of the Correction Board does not appear to be unwarranted.* Plaintiff says, however, that the Board action, in denying him

the relief sought, cannot be sustained because it failed to apply Air Force Manual 35–4 standards and that this was legal error. AFM 35–4, February 1, 1960, sets forth the standards prescribed by the Secretary in determining unfitness for military duty for the purpose of retirement, retention or separation. Physical unfitness is defined as:

Physical inability to perform the duties of the grade held, which are required during the performance of full military duty, field as well as garrison, in both peace and war.

Plaintiff argues that the Surgeon General did not speak in the terms employed by AFM 35–4, when he advised the Correction Board, but rather spoke in such terms as to whether plaintiff was unfit "to perform the duties of his grade," or "to reasonably perform the duties of his grade," or whether plaintiff was fit to perform "general service" or "normal world-wide service." It is true that the Surgeon General did not use the manual language relating to capacity required to perform "full military duty, field as well as garrison, in both peace and war." It would have provoked less controversy, perhaps, had he done so but he is not a lawyer. It does not follow though that this is not the standard he had in mind for plaintiff's counsel certainly put it squarely to the Correction Board which submitted plaintiff's brief to the Surgeon General. Nor is this the first time that the administrative authorities concerned have had the problem. AFM 35–4 was promulgated on February 1, 1960. The cases thereunder are legion and the criteria well understood. It is more pertinent to consider whether at any time defendant's medical officers or the Board found that plaintiff was qualified only for limited service, which would have been contrary to AFM 35–4. They did not do so. The full duty standard was not violated. Woodard v. United States, 167 Ct.Cl. 306 (1964).

■ The uncontested fact is that at the time of plaintiff's retirement he was performing all duties assigned to him in a manner satisfactory to his superiors. There was nothing in the record to indicate that he was impaired in doing so by his admitted physical disabilities. Of course, a man may have ailments which are of concern to him and annoying in the extreme, and still not be incapacitated to the extent of being unable to meet the full duty standard of AFM 35–4. That is plaintiff's situation. It is plaintiff's burden to show such incapacity and his evidence does not do so. His medical records and evaluation reports do not aid plaintiff's claim. If plaintiff by his testimony and evidence at trial could have shown that these records were in error, he could have prevailed here. But, he has not so persuaded the trier of the facts who had ample opportunity to observe him and to evaluate his trial evidence as well as the administrative record. Plaintiff's career since retirement and the examinations of the Veterans Administration buttress the conclusion that he is not disabled to any serious extent nor was he at the time of his retirement. Plaintiff has been disappointed in that he failed the hearing examination for a Los Angeles public school position but those standards have no relevance to the question of entitlement to military retirement for disability.

■ Plaintiff's next contention is that the Correction Board committed legal error in failing to apply AFM 160–1 and AFR 160–3 to the facts in this case. AFM 160–1 sets forth the physical standards which an individual must meet to be qualified for original appointment, recall to active duty, entrance into the Air Force Academy, or flying status. This court has held that similar regulations do not apply with decisive force to disability retirement situations for the two fields are said to be "entirely different." Cosgriff v. United States, 387 F.2d 390, 394, 181 Ct.Cl. 730, 737 (1967); Towell v. United States, 150 Ct. Cl. 422, 436 (1960). Under this interpretation the Board was correct in not applying AFM 160–1.

■ AFR 160–3 is a regulation designed to minimize the undesirable effects of noise on Air Force personnel. It sets forth categories to classify hearing losses and provides that when an individual's audiometric losses are severe enough to classify him in class C he should not be assigned to duty where he would be exposed to hazardous noise and, additionally, he would be ordered to a diagnostic center and be given otological examinations. Plaintiff's disability was in the class C category, but defendant apparently ignored this regulation. The consequences of its action could have been increased impairment of plaintiff's hearing to an extent that would have made him unfit for full military duty. Defendant is responsible for plaintiff's impaired hearing. But, it was the job of the Correction Board to determine, not whether defendant was responsible for plaintiff's conceded hearing loss, but whether the action of the service in retiring plaintiff for longevity, as he requested, rather than for disability, was a mistake. Upon the evidence before it, the action of the Board was fully supported and not at all arbitrary or capricious. Nowhere was there any record or finding demonstrating that plaintiff's disability was such as to render him unfit pursuant to the standards of AFM 35–4 for full military duty.

Plaintiff also takes strong exception to alleged arbitrary conduct on the part of the Surgeon General, sanctioned by the Correction Board, in refusing to answer many questions submitted by plaintiff pertinent to the issues of fact and regulations, in failing to consider any evidence other than the plaintiff's medical records, in failing to consider the facts in the context of the full-duty standard, and in failing to present any grounds or analysis of the evidence, regulations and law. Plaintiff also protests failure of the Board itself to grant a hearing.

■ Plaintiff has cited no statute or regulation requiring a Correction Board hearing or other than conclusionary findings by the Surgeon General or the Board. However, the facts of a case can be such that this common administrative procedure could not stand the test of legality because it would be arbitrary and unreasonable. Farrar v. United States, 358 F.2d 965, 173 Ct.Cl. 1008 (1965); Hutter v. United States, 345 F.2d 828, 170 Ct.Cl. 517 (1965); Weiner v. United States, 148 Ct.Cl. 445 (1960). This was found to be the situation, for instance, in Smith v. United States, 168 Ct.Cl. 545 (1964). Even though the Board opinion had formally recited that it was based upon all the evidence, it was clearly not supported by the evidence and was therefore overturned. "A presumptive correctness attends the administrative decision in these matters, but in the final analysis the court must review that action." 168 Ct.Cl. at 553.

■ The instant case differs from *Smith*, and others which have been to the same effect, in that here there is no substantial evidence to dispute the administrative findings. Here there are no experts in disagreement on complex medical evidence. Service connection is conceded. There is only one reasonable conclusion which the Board could have reached upon the record and the Board acted in good faith. It is understandable that plaintiff would rather have a more detailed statement by the Surgeon General or the Board. But the Surgeon General in his several reports noted plaintiff's disabilities, stated that his claim had been carefully reviewed in accordance with the provisions of AFM 35–4 and other regulations, manuals, and the statute; and concluded that upon the basis of "all available records" the disabilities were not of sufficient severity at the time of his retirement to disqualify him for physical reasons pursuant to the statute and regulations. Under the circumstances of the case nothing more was required.

■ In summary, plaintiff has not met his substantial burden of proving that his disabilities at the time of his retirement were clearly sufficient to have rendered him unfit for full mili-

tary duty within the meaning of AFM 35–4. The court cannot under the circumstances here say that the action of the Correction Board was arbitrary, unreasonable, in bad faith, without adequate support by the evidence, or in conflict with the statute and regulations. All the evidence submitted to the Board and all the evidence adduced at trial, having been carefully weighed, lead to the conclusion that plaintiff has not made his case. There are no grounds, therefore, to substitute judicial judgment for that of the Air Force in determining plaintiff's fitness for military duty. Unterberg v. United States, 412 F.2d 1341, 188 Ct.Cl. 994 (1969); Ward v. United States, 178 Ct.Cl. 210 (1967); Wesolowski v. United States, 174 Ct.Cl. 682 (1966); McEaddy v. United States, 152 Ct.Cl. 311 (1961).

Worley, C. J., and Baldwin, J., concurred in the result.

59 CCPA

**D. C. ANDREWS INTERNATIONAL, Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5445.**

United States Court of Customs and Patent Appeals.

Nov. 18, 1971.

Allerton deC. Tompkins, New York City, attorney of record, for appellant.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Susan C. Cassell, New York City, for the United States.