Sylvia COLE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–184C.

United States Court of Federal Claims.

Feb. 27, 1995.

Steven J. Cologne, San Diego, CA, for plaintiff.

Donna C. Maizel, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, Director David M. Cohen and Asst. Director James M. Kinsella, for defendant. Major Carla S. Walgenbach, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

Plaintiff in this military pay case seeks compensation in the form of back disability retirement pay for her deceased husband, Major (Chaplain) Connor G. Cole. Plaintiff filed her complaint in this court after the Air Force Board for Correction of Military Records (the AFBCMR or the Board) denied her application to correct Major Cole's records to reflect that he was retired for disability. The court remanded the matter back to the AFBCMR for consideration of an April 7, 1989 Veterans Administration (VA) rating decision which had found a service connection for Major Cole's death. *See Cole v. United States*, 26 Cl.Ct. 1018 (1992). On March 10, 1994, the Board determined that there was insufficient evidence of error or injustice, and denied plaintiff's request for reconsideration. The case is currently before the court on plaintiff's motion for summary judgment and defendant's motion to dismiss for lack of jurisdiction or, in the alternative, cross-motion for summary judgment. For the reasons set forth below the court grants defendant's motion for summary judgment.

## FACTS

The facts of this case were extensively discussed in *Cole v. United States*, 26 Cl.Ct. 1018 (1992), and the reader is presumed to be familiar with that opinion. Therefore, the court will discuss only those facts it deems essential to the issues currently before the court.

Major Cole was discharged from the United States Air Force in October 1963 after

twice being passed over for promotion. At the time of his separation he had served seventeen years, ten months and twenty-five days on active military duty. During this period of active service Major Cole was given a number of routine physical examinations and was found fit for military duty on each occasion. A number of EKGs were performed in connection with these physical examinations.[1] In 1960 the examining physicians began noting that Major Cole's EKGs were "abnormal" with non-specific T-wave changes. None of the physicians who examined Major Cole prior to his discharge considered the EKGs to be evidence of heart disease.

On May 2, 1963, Major Cole was given a final examination in anticipation of his discharge. The EKG record for that exam contains the following notation: "Abnormal [EKG] showing non-specific T changes similar to those seen in the past, related to post prandial variations. These changes are probably a normal variant but this must be established clinically." In his Report of Medical Examination Dr. Raymond Petrauskas, the examining physician, reported that there was an "[a]bnormal [EKG] (Non[-]specific T-wave changes). No change in tracings over past 7 years. No history or clinical evidence of heart disease." Based on his conclusions from the exam Dr. Petrauskas found Major Cole fit for military service.

On the occasion of each examination, Major Cole characterized his health as "excellent," and indicated that he had never suffered from shortness of breath, pain or pressure in his chest, palpitations or pounding heart, or high or low blood pressure. Further, Major Cole had no family history of heart disease and, as late as 1963, both of his parents and his older brother were apparently in excellent health. In addition, although Major Cole sought medical treatment during his seventeen years of active duty service, the circumstances of those occasions do not suggest that he was experiencing any of the symptoms commonly associated with heart disease.

From 1960 to 1963 Major Cole's Officer Effectiveness Reports contained performance ratings varying from "effectiveness well above most officers" to "marginal."[2] None of his performance ratings, including the single marginal rating, gave any indication that Major Cole was not physically fit for duty.

The record before the AFBCMR did not contain any of Major Cole's medical records for the period immediately following his 1963 discharge; there is a total absence of evidence indicating that he had any outward manifestations of heart disease in the four years following his separation from the military. In February 1968, more than four years after his discharge, Major Cole had his first heart attack. In a 1979 statement to the VA, Major Cole indicated that he "apparently recovered [from the 1968 heart attack] after treatment and extensive rest." In addition, it appears Major Cole was able to work as a conciliator both before and after his 1968 heart attack.

In 1975 Major Cole had open heart surgery and a pacemaker installed after a second heart attack. In December 1978 he applied to the VA seeking compensation for service connection of an existing disability. The VA gave him a disability rating of sixty percent for his arteriosclerotic heart disease, sixty percent for a 1978 stroke, and a combined disability rating of eighty percent. Nevertheless, because it found no connection between the disabilities and Major Cole's military service, the VA denied his application for a service-connected disability on July 25, 1979.

Major Cole died on August 10, 1988. Subsequently, the VA found a service connection for Major Cole's heart disease, but nevertheless denied benefits because his death was

---

1. Based on Major Cole's medical records, it appears the EKGs were performed beginning in January 1956 after Major Cole's fortieth birthday. Plaintiff does not allege, and there is no evidence to suggest, that the military doctors performed the EKGs because of suspected heart disease.

2. Major Cole only received one "marginal" rating in his entire military career. This rating appears attributable to a personality conflict between Major Cole and one or more of his commanding officers. Immediately preceding and following this review Major Cole was rated "effectiveness well above most officers."

initially attributed to cancer. The VA reopened his claim after the death certificate was amended to list the cause of death as cardiopulmonary arrest, caused by congestive heart failure of two years duration, resulting from ischemic heart disease [3] of twenty-eight years duration. On April 7, 1989, the VA found a service connection for the cause of death and awarded plaintiff Death and Indemnity Compensation.

On July 11, 1989, plaintiff applied to the AFBCMR seeking to change her husband's record from showing involuntary separation to reflect a separation for reasons of medical retirement. In support of her application she submitted a letter from Dr. Keith MacGaffey, Major Cole's personal physician from 1981 through 1988. Dr. MacGaffey concluded, based on his review of Rev. Cole's EKGs, that Major Cole had ischemic heart disease prior to his military discharge.

In connection with plaintiff's application Dr. Donald H. Ankov, the Air Force's senior resident expert in cardiology, issued an Advisory Opinion stating that based on the entire case file, Major Cole was fit and medically qualified for continued military service at the time of his separation and did not have any physical or mental condition that would have warranted consideration of medical retirement. Although Dr. Ankov reviewed the abnormal EKGs of 1962 and 1963, he found no indication that Major Cole had ischemic heart disease while on active duty. Dr. Ankov concluded that no error or injustice occurred, and that the documented reason for Major Cole's separation was proper.

On October 24, 1990, the AFBCMR determined that the evidence presented did not demonstrate the existence of probable material error or injustice, and denied plaintiff's application to correct Major Cole's record. In its decision, the AFBCMR adopted Dr. Ankov's Advisory Opinion that the nonspecific T-wave changes did not constitute clinical

evidence of heart disease and that Major Cole was qualified for service at the time of his separation. On February 22, 1991, the AFBCMR declined to reconsider its opinion on the ground that there was insufficient evidence of error or injustice.

Plaintiff filed this suit on April 14, 1992, seeking back disability retirement pay. In her complaint she alleged that Major Cole had a service related disability that, since 1957, impaired his performance of military duties. Plaintiff further alleged that Major Cole was unfit to perform the duties of his office at the time of his separation. As grounds for relief plaintiff contended that the AFBCMR's refusal to correct Major Cole's records to reflect a disability retirement was arbitrary, capricious, contrary to law or regulation and unsupported by substantial evidence.

In reviewing the AFBCMR decision the court was unable to determine whether the Board considered the VA's revised rating decision of April 1989 which had found a service connection for Major Cole's death. Because proper process required the Board to consider this decision the court denied defendant's motion for summary judgment and remanded the matter to the Board to consider the April 7, 1989 rating decision.

On remand plaintiff submitted a declaration by Dr. William A. Pitt. After reviewing the EKGs performed during Major Cole's military service Dr. Pitt found evidence of ongoing ischemic heart disease in 1962. The AFBCMR consultant, Dr. Michael J. Lucca, disagreed, stating that the "EKG is too non-specific in nature to say that it is definitely related to coronary artery disease." Although he conceded the possibility that Major Cole had sub-clinical heart disease during his military service he found no clinical evidence of heart disease. He also noted that Major Cole was able to perform all his military duties without limitation. In response

---

**3.** Ischemic heart disease is a shortage of blood to the heart due to the thickening and narrowing of arteries. *See* RICHARD SLOANE, THE SLOANE–DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY 389 (1987). In the instant case Major Cole's ischemic heart disease was caused by arteriosclerosis. Arteriosclerosis is a general term for a number of conditions where, as part of the normal aging process,

the inside of the arteries thicken and the arteries lose some of their elasticity. THE MERCK MANUEL OF DIAGNOSIS AND THERAPY 386–87 (Dr. Robert Berkow et al. eds., 15th ed. 1987); *see also* J.E. SCHMIDT, M.D., 1 SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE A–381 (Release 27, February 1994). Major Cole was forty-seven years old when he was discharged from the military.

to this opinion, plaintiff submitted a supplemental declaration in which Dr. Pitt stated that any finding that Major Cole's EKGs did not show myocardial ischemia was incorrect.

On March 10, 1994, the Board rejected the VA determination as unpersuasive and determined that there was insufficient evidence that Major Cole had a medical condition that would have rendered him unfit at the time of his discharge. On August 1, 1994, plaintiff filed a motion for summary judgment. In support of her motion she argued that (1) the EKGs clearly show that Major Cole had ischemic heart disease in 1963, and (2) Major Cole's condition rendered him unfit at the time of his discharge. On September 12, 1994, defendant filed a motion to dismiss for lack of subject matter jurisdiction, a cross-motion for summary judgment and its response to plaintiff's motion to dismiss. In support of its motion for summary judgment, and in opposition to plaintiff's motion, defendant argued that there was substantial evidence that Major Cole was fit for duty in 1963.

## DISCUSSION

### I. *Subject Matter Jurisdiction*

█ As an initial matter the court rejects defendant's argument that this court has no jurisdiction over plaintiff's claim because plaintiff's remedy is primarily equitable in nature. The Tucker Act defines the subject matter jurisdiction of the court, in relevant part, as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C.A. § 1491(a)(1) (Supp. V 1993).

█ The Tucker Act is a jurisdictional statute only; "it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). To come within the confines of the Tucker Act a statute must " 'fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.' " *Dehne v. United States,* 970 F.2d 890, 893 (Fed.Cir.1992) (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983)); *accord, Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1009 (Ct.Cl.1967).

█ As the party invoking the jurisdiction of this court, plaintiff bears the burden of establishing that some statute or regulation mandates money damages. *See Maniere v. United States,* 31 Fed.Cl. 410, 413 (1994). Statutes that merely permit discretionary payment cannot form the basis for jurisdiction in this court. *Adair v. United States,* 648 F.2d 1318, 1322 (Ct.Cl.1981).

Plaintiff applied to the AFBCMR for correction of military records under 10 U.S.C. § 1552. Pursuant to 10 U.S.C. § 1552 the Secretary of the Air Force, acting through the AFBCMR, has the authority to correct military records to remedy an error or injustice. 10 U.S.C. § 1552(a) (Supp. V 1993). Further, if a claimant is owed money as a consequence of the correction, section 1552(c) authorizes payment of that amount. 10 U.S.C. § 1552(c) (1988).

In the instant case, plaintiff's claim for money is based on 10 U.S.C. § 1201. Pursuant to 10 U.S.C. § 1201, a regular member of the armed forces entitled to basic pay who is determined to be "unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay" may be retired with pay if the disability is permanent. 10 U.S.C. § 1201(1) (1988 & Supp. V 1993). If the member has at least eight but less than twenty years service in the military, he or she will not be entitled to disability retirement pay unless "the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veteran's Affairs at the time of the determination." 10 U.S.C. § 1201(3).

If the AFBCMR determined that it was an error or injustice not to retire Major Cole for

disability, he would have been entitled to payment under 10 U.S.C. § 1201. *See Sawyer v. United States,* 930 F.2d 1577, 1580 (Fed.Cir.1991). Therefore, this court has jurisdiction over plaintiff's claims for disability retirement pay under 10 U.S.C. § 1201. *Id.; see also Friedman v. United States,* 158 F.Supp. 364, 374–75 (Ct.Cl.1958); *Furlong v. United States,* 152 F.Supp. 238, 240–41 (Ct. Cl.1957); *Pope v. United States,* 15 Cl.Ct. 218, 221 (1988) (citations omitted).

II. *Summary Judgment*

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). The movant has the initial burden to identify from the record the absence of material issues of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court does not "weigh the evidence and determine the truth of the matter but [only] determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Further, the court must "view the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Hodosh v. Block Drug Co.,* 786 F.2d 1136, 1141 (Fed.Cir.1986) (citations omitted). Based on the standard of proof that would apply at trial, the court should ascertain whether there is sufficient evidence to warrant a directed verdict. *Anderson,* 477 U.S. at 254–55, 106 S.Ct. at 2513.

A. *Standards of Review in Disability Pay Cases*

Although this court has jurisdiction to adjudicate claims for disability retirement pay, its review is extremely limited. The initial decision whether a member of the armed forces is unfit for military service at the time of his or her release is made by the military, not the courts. *Pope,* 15 Cl.Ct. at 222–23

(citations omitted). Generally, when a member's fitness is in doubt, he or she will be referred to a Medical Board. If the Medical Board believes the member is unfit for military service, the case will be reviewed by a Physical Evaluation Board (PEB). The PEB will consider whether the member is unfit, whether the disability is service connected, and the degree of disability in accordance with the Veteran's Administration's schedule of disabilities. This decision will then be reviewed by the Physical Review Council. *See generally, Imhoff v. United States,* 177 Ct.Cl. 1, 4, 1966 WL 8994 (1966), *cert. denied,* 389 U.S. 844, 88 S.Ct. 89, 19 L.Ed.2d 109 (1967).

■ The decision whether a member is fit or unfit is made based on the member's "physical and mental capabilities as a whole." *Thompson v. United States,* 156 Ct.Cl. 158, 163 (1962). Neither the fact that a member has physical disabilities, nor the degree of disability will be relevant unless a member first has been found unfit. United States Air Force, AFP 35–3–1, 1 (February 20, 1963); *see also* 10 U.S.C. § 1201.

In contrast to the issue of fitness, the VA rating schedule is not based on the impact of a disability on military service. United States Air Force, AFP 35–3–1 at 1; *Watson v. United States,* 152 Ct.Cl. 273, 280, 1961 WL 8666 (1961). Rather, the schedule rates the effect of the disability on civilian employment. *Watson,* 152 Ct.Cl. at 280, 1961 WL 8666; *see also* AFP 35–3–1 at 1. Therefore, it is possible for a person who is unfit for military service to be zero percent disabled under the VA rating schedule. A member of the armed forces who is found to be unfit but is rated less than thirty percent disabled will not be entitled to disability retirement pay unless he or she has served at least twenty years. 10 U.S.C. § 1201(3)(B); *Watson,* 152 Ct.Cl. at 279–80, 1961 WL 8666.

■ If the military determines that a member is unfit by virtue of a disability, that decision will be upheld unless it was "arbitrary, capricious, unsupported by substantial evidence, or in noncompliance with applicable laws and regulations." *Stephens v. United States,* 358 F.2d 951, 955 (Ct.Cl.1966) (citations omitted); *see also Wesolowski v. Unit-*

ed States, 174 Ct.Cl. 682, 689–90, 1966 WL 8857 (1966). Plaintiff bears the burden of demonstrating, by clear and convincing evidence, that the AFBCMR decision that Major Cole was fit for duty in 1963 was arbitrary or capricious, and that his condition was at least thirty percent disabling under the VA schedule. *Wesolowski*, 174 Ct.Cl. at 689, 1966 WL 8857; *Thompson*, 156 Ct.Cl. at 161.

**B.** *The AFBCMR Reasonably Determined That Major Cole Was Fit For Military Service Upon Discharge*

■ A member of the armed forces who incurs a disability during active military service is not entitled to disability retirement unless the disability renders him or her unfit for military service at the time of separation. 10 U.S.C. § 1201. Plaintiff argued that Major Cole was "suffering from the inception of heart disease" in 1963. She contended therefore that he was necessarily entitled to disability retirement pay. This argument is without merit.

As the Court of Claims noted in *Walters v. United States:*

It is not enough, however, for plaintiff merely to show that his service-connected injuries resulted in an eventually disabling condition or that at the time of release from active duty this condition was in an incipient stage of pathological development. Plaintiff must proceed one step further and establish that the condition was of such extent and severity as to actually render him unfit for active [military] service at the time of his release or shortly thereafter.

*Walters v. United States*, 358 F.2d 957, 962 (Ct.Cl.1966) (citing *Stone v. United States*, 160 Ct.Cl. 128, 1963 WL 8521 (1963)). Even if this court assumes that Major Cole's arteriosclerotic heart disease had its inception during his military service, he was not rendered unfit merely by virtue of his disease.

■ Arteriosclerosis is a common incident of aging, experienced by all to varying degrees. *See supra* n. 3. The mere fact that a service member might, like many in the general population, be in the early stages of arteriosclerosis does not automatically render the service member unfit for military duty. Air Force Manual, AFM 35–4F, Attach. 18, 97, 102–103 (February 20, 1963); *see also* Army Regulations AR 40–504 (28 June 1955, With Changes No. 1, February 6, 1959), *reprinted in McGiven v. United States*, 183 Ct.Cl. 920, 936, 1968 WL 9148 (1968); *Patten v. United States*, 161 Ct.Cl. 131, 135–36, 1963 WL 8546 (1963). At the time of Major Cole's discharge, service members who had arteriosclerotic heart disease with "myocardial insufficiency (congestive heart failure), repeated anginal attacks [4], or objective evidence of myocardial infarction" would normally have been considered unfit for duty. AFM 35–4F, Attach. 18 at 102–103. There is no evidence in the record, however, that Major Cole had any of these symptoms of heart disease until at least 1968—four years *after* his separation.

Further, there is ample evidence supporting the AFBCMR decision that Major Cole was fit at the time of his discharge. First, during his discharge physical the examining physician found Major Cole to be fit for general duty. Plaintiff argued that this contemporaneous determination of fitness is meaningless because additional medical tests should have been performed on Major Cole. Assuming plaintiff is correct that the notation in Rev. Cole's 1963 EKG record was a recommendation for further testing, the record still does not support plaintiff's position. In light of the differing interpretations placed on Major Cole's EKGs by apparently qualified physicians, and Rev. Cole's medical and family history, the court cannot conclude that evidence of heart disease was so clear at the time of Major Cole's discharge that additional review was required. *See Stephens*, 358 F.2d at 954. In his Report of Medical Exam, Dr. Petrauskas noted the abnormal

---

**4.** Angina is characterized by "spasmodic, choking or suffocative pain." RICHARD SLOANE, THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY 35 (1987). Generally, the term "angina" refers to "angina pectoris," a "paroxysmal thoracic pain, with a feeling of suffocation and impending death ... precipitated by effort or excitement." *Id.* Major Cole did not report any of these symptoms during his routine physical exams.

EKG but found "no history or clinical evidence of heart disease." Plaintiff has not alleged that any Air Force regulation required Dr. Petrauskas to conduct additional tests once he was satisfied that Major Cole was fit for duty. Public officials are presumed to carry out their duties in good faith, *De Cicco v. United States,* 677 F.2d 66, 72 (Ct.Cl.1982), and the evidence in the record does not rebut that presumption.

Further, based on their review of the record before the AFBCMR, both Dr. Ankov and Dr. Lucca expressed the opinions that Major Cole did not have a disability that would have rendered him unfit for duty in 1963. Plaintiff did not challenge the qualifications of either doctor and there is no evidence to support plaintiff's claim that the doctors ignored Rev. Cole's subsequent heart attacks in rendering their opinions.

Major Cole's medical history during active duty further supports the AFBCMR's decision. There is simply no evidence that Major Cole suffered from dizziness, pain in his chest, shortness of breath, heart palpitations, or a pounding heart during his entire military career. Further, he never sought treatment based on any of these clinical symptoms of heart disease. *Compare Jordan v. United States,* 205 Ct.Cl. 65, 68–70, 1974 WL 21686 (1974); *Walters,* 358 F.2d at 958. Although Major Cole might not be the best authority on the state of his health, he was most certainly competent to attest to his lack of symptoms.

Finally, in the year before his October 1963 discharge, Major Cole received performance ratings ranging from "slightly below average" to "effective and competent." These satisfactory performance reviews in the twelve months preceding his discharge support the AFBCMR's conclusion that Major Cole was capable of performing his military duties at the time of his separation. *See, e.g., Imhoff,* 177 Ct.Cl. at 7, 1966 WL 8994.

In support of her argument that the AFBCMR decision was arbitrary and capricious, plaintiff submitted evidence related to Major Cole's medical condition after he left the military. She correctly stated that Major Cole's condition after he left the military might be relevant evidence of his condition at the time of his discharge. *Jordan,* 205 Ct.Cl. at 81, 1974 WL 21686 (citing *Powers v. United States,* 176 Ct.Cl. 388, 1966 WL 8880 (1966)); *Walters,* 358 F.2d at 962–63. None of the evidence submitted by plaintiff, however, is contemporaneous with Major Cole's discharge. The first evidence of Major Cole's post-discharge condition is his 1968 heart attack which occurred more than four years after he left the military. *Compare Jordan,* 205 Ct.Cl. at 65, 1974 WL 21686; *Walters,* 358 F.2d at 963. Although plaintiff alleged that Major Cole was unfit in 1963 she did not submit any factual evidence (other than evidence that Major Cole's heart disease is traceable to his period of service) supporting this claim.

The record also contains a 1987 letter from Dr. MacGaffey in which he concluded that Major Cole's progressive heart disease was traceable to his military career. Further, Dr. MacGaffey alluded to "longstanding angina" in a 1989 letter. The 1989 letter did not specify when the angina attacks began and there are no medical records documenting the onset of these attacks. Other than his conclusion that Major Cole had heart disease during his military service, and his statement that this condition was "progressive" and "escalated" after his discharge, Dr. MacGaffey provided no information on Major Cole's physical condition as of October 1963.

Plaintiff also submitted several declarations from Dr. Pitt. In addition to finding clear evidence of heart disease in Major Cole's EKGs, Dr. Pitt stated that the military doctors should have limited his physical and mental activity. Although this declaration constitutes some evidence of Major Cole's fitness as of October 1963, its relevance is limited because there is no indication that Dr. Pitt's opinion was based on Air Force Standards of fitness. *See De Cicco,* 677 F.2d at 71. The value of this declaration is further weakened by the fact that Dr. Pitt never examined Rev. Cole but rather formed an opinion on the basis of the EKG records.

 Evidence that the VA rated Major Cole sixty percent disabled as a result of arteriosclerotic heart disease is also of limit-

ed value in the instant case since the AFBCMR was not bound by that decision. *See, e.g., Stephens,* 358 F.2d at 955. Further, although the VA's rating was based on a physical examination, the examination did not occur until 1979. *See Finn v. United States,* 548 F.2d 340, 342 (Ct.Cl.1977). *Compare Jordan,* 205 Ct.Cl. at 73–74, 1974 WL 21686; *Walters,* 358 F.2d at 963. By the time the VA examined Rev. Cole he had been out of the military for fifteen years, he had suffered two heart attacks, he had endured open heart surgery, and his heart was regulated by a pacemaker. Plaintiff conceded that arteriosclerotic heart disease is a progressive disease and it is axiomatic that Major Cole was not in the same condition in 1963 as in 1979.

██ Plaintiff also argued that the Air Force recognized Major Cole's right to disability retirement. This argument is based on Mrs. Cole's receipt of a Military Identification Card in 1991. The Air Force disputes the significance of this document and the court notes that plaintiff received this document from the Department of the Navy, not the Department of the Air Force. Further, this evidence was not presented to the AFBCMR although it has been available to Mrs. Cole since 1991. This court does not view the evidence in disability retirement cases *ab initio. See, e.g., De Cicco,* 677 F.2d at 69; *Pope,* 15 Cl.Ct. at 222–23. The determination of whether the AFBCMR decision was arbitrary and capricious must, therefore, be based on the record before the AFBCMR. *See Thompson v. United States,* 14 Cl.Ct. 702, 706 (1988).

The court concludes that plaintiff's evidence on the issue of fitness is insufficient to overcome the substantial contemporaneous evidence supporting the AFBCMR decision. *See Finn,* 548 F.2d at 342; *see also Wesolowski,* 174 Ct.Cl. at 692–93, 1966 WL 8857. Because the evidence is overwhelming that at the time of his discharge Major Cole was fit and capable of fully performing his job as Chaplain in the United States Air Force, it is unnecessary to decide whether he would have been rated at least thirty percent disabled if he had been found unfit.

Because plaintiff has not met her burden of establishing that the AFBCMR decision was arbitrary and capricious, and there was no showing that the AFBCMR decision was contrary to existing law or regulation, defendant is entitled to a judgment dismissing plaintiff's complaint.

## CONCLUSION

For the foregoing reasons, the court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.

**IT IS SO ORDERED.**